THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARION KALLEM, Defendant-Appellant.

First District (5th Division)　No. 78-139

Opinion filed March 2, 1979.

Allen J. Marco, of Marco & Mannina, of Downers Grove, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, Bruce Brandwein, and Dewey Roscoe Jones, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a hearing in the Circuit Court of Cook County, the court found that the requirements of the implied consent act of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1) were met when defendant was placed under arrest, the arresting officer had probable cause to believe defendant was intoxicated, and after a request by the officer, defendant refused to take the test given to determine intoxication. The trial court accordingly recommended that defendant's driving privileges be suspended. On appeal, defendant contends that the State failed to prove all of the required elements of the implied consent act, and that the trial court's findings should therefore be reversed.

At the hearing below, the following pertinent evidence was adduced.

*For the State*
    *Bruce Frisbie, LaGrange Police Officer*
    On January 7, 1977, at approximately 1:40 a.m., he observed defendant's vehicle going eastbound on Ogden Avenue. He followed the vehicle for six or eight blocks and observed that it was weaving from the center lane to the curb lane and occasionally striking the curb. He then activated the red lights of his squad car and initiated a traffic stop. The vehicle pulled up partially over the curb and partially on the road, and stopped. As he approached it, defendant emerged from the vehicle. He noticed that defendant's eyes were bloodshot and that he seemed to be having problems keeping his balance. He asked defendant for his driver's license. When defendant handed it to him, he noticed the odor of intoxicating liquor on defendant's breath. He also noticed that defendant's speech was "thick-tongued." Defendant told him that he had been at the Lilac Lounge and was on his way home. After he saw that defendant was unable to walk in a straight line on the street without stumbling, he asked defendant to come to the police station and take a sobriety test. At the police station, which was about three or four blocks away, he observed that defendant was again unable to walk a straight line without staggering or stumbling, and was unable to touch the tip of his nose with his right or left index finger. He read defendant his rights under the implied consent act, and defendant refused to take the breath test. He also read defendant his "Miranda" rights, which defendant said he

understood, and asked defendant a number of questions concerning his earlier activities. Defendant admitted that he drank two glasses of vermouth between 11:30 p.m. and 1:30 a.m. Defendant also gave a handwriting specimen. Officer Frisbie testified that he had made between 250 and 300 arrests for driving under the influence of alcoholic beverages and had seen people who were under such influence hundreds of times. It was his opinion that at the time in question, defendant was under the influence of intoxicating liquor.

On cross-examination he conceded that defendant's vehicle weaved within the eastbound lanes and did not go into the westbound lanes. He acknowledged that he was following five or six car lengths behind defendant's vehicle, but stated that his view was unobstructed. He acknowledged that 1:40 a.m., which is the time written on the ticket he gave defendant, was the time that he made the traffic stop. He further acknowledged that his request of defendant to take the breath test and defendant's refusal occurred at 1:55 a.m.

*For the Defense*
*Robert Dykes*

On January 6, 1977, he met with defendant at the Sheraton Oak Brook Hotel from 11:30 p.m. to 1:30 a.m. Defendant had "two vermouths on the rocks." In his opinion, having previously observed people who were under the influence of intoxicating beverages, defendant was not intoxicated when he left him.

On cross-examination he conceded that he did not arrive at the hotel with defendant.

*Defendant Clarion Kallem on his own behalf*

On January 6, 1977, he woke up between 6 and 6:30 a.m. and went to a job he had in Iowa. He returned home between 9 and 9:30 p.m., and agreed to an urgent meeting with Robert Dykes. He corroborated Dykes' account of their meeting and testified that the two glasses of vermouth he had then were the only intoxicating drinks he had that day. He substantially corroborated Officer Frisbie's account of the stop of his car. After he walked along a line on the street, Officer Frisbie told him, "You come with me." He went with Officer Frisbie to the police station, where he successfully performed certain tests. Frisbie gave him "Miranda" warnings, interviewed him, and took a handwriting specimen.

OPINION

On appeal, defendant attempts to substantively attack the trial court's findings by arguing that all of the requirements of the implied consent act were not met. The State argues, however, that we lack jurisdiction to hear this appeal because the findings and recommendation

appealed from are not final orders, but are subject to further administrative proceedings. We find this argument to be dispositive.

The implied consent act (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1), under which the trial court's findings against defendant were made, provides that a person who drives a motor vehicle in Illinois thereby consents to take a test for intoxication following his arrest for driving while under the influence of intoxicating liquor or narcotic drugs. (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1(a).) The hearing below was held under subparagraph (d) of the act, which allows a defendant to petition for a hearing which shall be limited to such issues as whether he was properly arrested and whether he refused to take the intoxication test upon the request of a police officer. Subparagraph (d) concludes by stating that:

> "Immediately upon the termination of the Court proceedings, the Clerk shall notify the Secretary of State of the Court's decision. The Secretary of State shall thereupon suspend the driver's license * * *. If the Court recommends that such person be given a restricted driving permit to prevent undue hardship, the Clerk shall so report to the Secretary of State." (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1(d).)

Subparagraph (e) of the act states that:

> "Regardless of whether such person petitions the Court for a Court proceeding as provided in Paragraph (d) of this Section, whenever a driver's license is suspended under this Section, the Secretary of State may, if application is made therefor by the person whose license is so suspended, issue such person a restricted driver's permit, to prevent undue hardship * * *." (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1(e).)

Additionally, we note that the Secretary of State, under sections 2—118(a) and (b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 2—118(a) and (b)), is empowered either upon request or in his discretion to hold hearings after the suspension, revocation or denial of a license, and that:

> "Upon any such hearing, the Secretary of State shall either rescind or, good cause appearing therefor, continue, change or extend the Order of Revocation or Suspension, as the case may be." Ill. Rev. Stat. 1975, ch. 95½, par. 2—118(c).

■■ The statutory language quoted above clearly supports the conclusion that, as the third district of this court stated in *People v. Finley* (1974), 21 Ill. App. 3d 335, 340, 315 N.E.2d 229, 232, that "[a] suspension of a driver's license is a purely administrative function of the Secretary of State * * *." In *Finley*, defendant brought an interlocutory appeal as provided for by Supreme Court Rule 308 (Ill. Rev. Stat. 1975, ch. 110A, par. 308).

Defendant's interlocutory appeal sought review of the trial court's order which struck his demand for a jury trial at his implied consent hearing, and also struck his subpoena for a discovery deposition and interrogatories. In the instant case, however, defendant does not attempt to classify his appeal as interlocutory in nature, and the trial court did not state, as Rule 308 requires, that its order "involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Defendant does attempt, however, to bring this appeal as though it were from a final and appealable order.

■■■ As we indicated above, the clear language of the relevant statutes supports the State's position that the trial court's findings are not final and appealable, but are merely a stage in the administrative process contemplated by the implied consent act. We note that this is the conclusion reached in *People v. Dodd* (1977), 51 Ill. App. 3d 805, 367 N.E.2d 239. In that case, as here, defendant attempted to appeal from and attack the merits of a trial court finding that there had been compliance with the requisites of the implied consent act. Additionally, subsequent to his implied consent hearing, but prior to the disposition of his appeal, defendant's license in *Dodd*, had been suspended by the Secretary of State. The *Dodd* court considered the statutory language quoted and referred to above and concluded that:

> "When the implied consent statute (par. 11—501.1) and the statute providing for a hearing before the Secretary of State upon suspension of license (par. 2—118) are considered together it is apparent that first a hearing is held in front of the circuit judge under the former statute and, if factual determination adverse to defendant is made, then a hearing is held under the latter statute before the Secretary of State. Given the factual setting in this case the determination of the trial court cannot be characterized as a final determination. It is but a condition precedent to further proceedings before the Secretary of State." (51 Ill. App. 3d 805, 809-10, 367 N.E.2d 239, 242.)

Defendant herein responds to *Dodd* by citing *Village of Park Forest v. Angel* (1976), 37 Ill. App. 3d 746, 347 N.E.2d 278, and *City of Rockford v. Badell* (1975), 33 Ill. App. 3d 427, 337 N.E.2d 200. In *Rockford*, the court granted defendant's motion for a directed verdict, while in *Park Forest*, the court found for defendant after the implied consent hearing was completed. As the court in *Dodd* noted (51 Ill. App. 3d 805, 809, 367 N.E.2d 239, 242), the orders entered in *Rockford* and *Park Forest* had the effect of dismissing the proceedings against the defendant. Because a finding in the defendant's favor would terminate all further proceedings against him under the implied consent act, such a decision is properly

considered a final and determinative one, and an appeal may therefore be taken from it. In the instant case, however, the trial court's findings and recommendation that the requirements of the implied consent act have been met and suspension should follow are only the necessary first steps before the case's ultimate disposition by the Secretary of State. As we noted above, subparagraph (d) of the implied consent act provides that upon notification of the trial court's decision, the Secretary of State "shall thereupon suspend the driver's license." (Ill. Rev. Stat. 1975, ch. 95½, par. 11.501.1(d).) As the court in *Rockford* stated, the Secretary of State's suspension of defendant's driver's license is only reviewable by administrative review. (33 Ill. App. 3d 427, 429, 337 N.E.2d 200, 202.) Defendant herein has acknowledged that his license has not yet been suspended, and that administrative hearings before the Secretary of State have not yet been held. It is apparent from the statutes cited and quoted above that the final result of those administrative hearings may be the continued suspension of defendant's license, or the rescission of such suspension, or the suspension of defendant's license with whatever changes or modifications the Secretary of State may for good cause impose. Regardless of what the ultimate disposition of this case may be, its determination is clearly for the Secretary of State under the prescribed powers of administrative action. Accordingly, this appeal is dismissed for lack of jurisdiction.

Appeal dismissed.

SULLIVAN, P. J., and WILSON, J., concur.